IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EXPERIAN MARKETING SOLUTIONS INC., a Delaware corporation, | ) ) | Case No. 1:15-CV-476 |
| | ) | |
| Plaintiff, | ) | Hon. Robert Holmes Bell |
| | ) | |
| v | ) | |
| | ) | |
| JEREMY LEHMAN, an individual, THORIUM DATA SCIENCE, LLC, a Michigan limited Liability company, | ) ) ) | |
| | ) | |
| Defendants, | ) | |

---

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**[ORAL ARGUMENT REQUESTED]**

---

# <u>TABLE OF CONTENTS</u>

Index of Authorities ........................................................................................................... iii

I.     Introduction ................................................................................................................1

II.    Background and Pertinent Allegations .........................................................................3

III.   Law and Argument ......................................................................................................6

       A.    Standard of Review ..........................................................................................6

       B.    Plaintiff's Complaint is an Improper "Shotgun" Pleading and Should be
            Dismissed in its Entirety ...................................................................................7

       C.    Plaintiff Fails to Allege a Violation of the CFAA (Count I) ..............................11

            1.    The CFAA is a Criminal Statue and Must be Construed Narrowly,
                 in Defendants' Favor ...........................................................................11

            2.    Plaintiff's CFAA Claim Fails, Because Plaintiff has not Alleged an
                 Interruption in Service and Therefore Fails to Allege a "Loss"
                 Under the Act .....................................................................................13

            3.    Plaintiff's "Access" Theories Fail, Because Lehman was
                 Authorized to Access His Work Computer ...............................................15

            4.    Plaintiff's "Transmission" Theory Fails, Because Plaintiff Has not
                 Alleged "Damage" Under the Act ...........................................................18

       D.    Plaintiff Has Failed to State a Claim for Misappropriation of Trade Secrets
             (Count II) .......................................................................................................20

       E.    Plaintiff's Breach of Contract Claims Fail (Counts III-XI)..................................22

            1.    Plaintiff Fails to Allege Damages ...........................................................22

            2.    Plaintiff's Breach of Contract Claims are Invalid, Because the
                 Restrictive    Covenants    in    the    Parties'    Agreements    are
                 Unenforceable .....................................................................................24

            3.    Plaintiff's Claims Under the Employment Agreement (Counts III-
                 VI) Should be Dismissed, Because That Agreement Has Been
                 Superseded .........................................................................................25

i

F.    Plaintiff Has Failed to State a Claim for Breach of Fiduciary Duty (Count XII) .................................................................................................................. 26

G.    Plaintiff's Tortious Interference Claim (Count XIII) Fails, Because Plaintiff Has Failed to Allege a Breach of Contract Caused by Lehman ............. 28

IV.   Conclusion ...................................................................................................................... 29

# INDEX OF AUTHORITIES

Cases

*Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 687 (E.D. Mich. 2012) ...................................15

*Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008) ................................................................................................................12

*Anderson v. District Bd. of Trs. Of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996)..........................................................................................10

*Arakelian v. Omnicare, Inc.,* 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010).........................................24

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ....................................................................6, 20

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ...................................6, 20, 21, 28

*Bishop v. Lakeland Animal Hosp*., P.C., 644 N.E.2d 33, 36 (Ill. Ct. App. 1994) ..................................................................................................................24

*Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 948-49 (W.D. Mich. 2003) ..........................................................................26

*Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154, 1158 (E.D. Cal. 2013) ...........................................................................................14

*Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012)..............................................6

*Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG*, 304 F. Supp. 2d 574, 581 (D. Minn. 2007) ..........................................................................14

*Cheney v. IDP Analytics, LLC,* No. 08-23188-CIV, 2009 WL 1298405, at *6 (S.D. Fla. April 16, 2009) ...............................................................................14

*Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 947 (7th Cir. 2013) ............................................8

*Cohen v. Gulfstream Training Academy, Inc.*, No. 07-60331-CIV, 2008 WL 961472, at *4 (S.D. Fla. April 9, 2008) ..........................................................14

*Continental Group, Inc. v KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009)....................................................................................14

*Cook v. Randolph County,* 573 F.3d 1143, 1151 (11th Cir. 2009) ...............................................10

*Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)..........................................................9

*Cranel, Inc. v. Pro Image Consultants Grp*., LLC, No. 2:13-cv-766, 2014 WL 4829485, at *7 (S.D. Ohio Sept. 29, 2014)...........................................16

*CustomGuide v. CarreerBuilder, LLC*, 813 F. Supp. 2d 990, 997-98
(N.D. Ill. 2011) ..................................................................................................11

*Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.,* No. 1:10-CV-450, 2012
WL 2524008, at *4 (W.D. Mich. June 29, 2012) ...................................12, 17, 19

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114-15 (2d Cir. 1982)....................10

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l., Inc*., 616
F. Supp. 2d 805, 812 (N.D. Ill. 2009) ...................................................................14

*Dice Corp. v. Bold Tech*s., 913 F. Supp. 2d 389, 414 (E.D. Mich. 2012),
aff'd 556 Fed. App'x 378 (6th Cir. 2014) .......................................................11, 20

*Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013) ........................12

*Ford Motor Co. v. Toth*, 872 F.2d 1025, (6th Cir. 1989)...............................................27

*Friedman v. Ocean Dreams*, LLC, 56 A.D.3d 719, 720 (N.Y. App. Div.
2008) .......................................................................................................................26

*Garst v. Lockheed-Martin Corp*., 328 F.3d 374 (7th Cir. 2003)......................................8

*Gen. Scientific Corp. v. SheerVision, Inc.*, No. 10-cv-13582, 2011 WL
3880489, at *4 (E.D. Mich. Sept. 2, 2011) ...........................................................14

*Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) ......................................8

*Glover v. Mary Jane Elliott, P.C*., No. 1:07-cv-648, 2007 WL 2904050,
at *2 (W.D. Mich. Oct. 2, 2007) .............................................................................9

*Grant Mfg. & Alloying, Inc. v. McIlvain*, No. 10-1029, 2011 WL
4467767, at *4 fn. 9 (E.D. Pa. 2011) .........................................................13, 18, 19

*Gurman v. Metro Housing & Redevelopment Auth.*, 842 F. Supp. 2d
1151, 1152 (D. Minn. 2011) ..........................................................................7, 9, 10

*Jagex Ltd v. Impulse Software*, 750 F. Supp. 2d 228, 238 (D. Mass. 2010) ..................18

*Knight Enter. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App.
2013) .......................................................................................................................28

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)..........................17

*Mackall v. U.S. Postal Serv.*, No. 12–cv–10302, 2012 WL 2131150, at
*1, fn. 2 (E.D. Mich. May 2, 2012) .........................................................................6

*Martin v. Fed. Life Ins. Co.*, 644 N.E.2d 42, 44 (Ill. Ct. App. 1994) ...........................24

iv

*McClean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 480 (4th Cir. 2002)................................................................................9

*McCormick v. Favreau,* 82 A.D.3d 1537, 1541 (N.Y. App. Div. 2011) .....................................23

*Medafor, Inc. v. Starch Med., Inc.*, No. 09-CV-0441, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009)..........................................................21

*Nat'l City Bank, N.A. v. Republic Home Loans, LLC,* No. C09-1550RSL, 2010 WL 959925, at * 5 (W.D. Wash. March 12, 2010).................................18

*New Show Studios, LLC v. Needle,* No. 2:14-cv-01250-CAS, 2014 WL 2988271, at *6 (C.D. Cal. June 30, 2014)................................................15, 18

*Nexans Wires S.A. v. Sark-USA, Inc.,* 319 F. Supp. 2d 468, 472 (S.D.N.Y 2004) ....................................................................................13

*Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) ...............................................................................15

*Palmolive Tower Condominiums, LLC v. Simon*, 949 N.E.2d 723, 730 (Ill. Ct. App. 2011).....................................................................23

*Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) ......................................8, 9

*Pulte Homes, Inc. v. Laborers' Int'l Union of N.A.,* 648 F.3d 295, 301 (6th Cir. 2011) ....................................................................................11, 19

*Quality Mfg., Inc. v. Mann,* No. 286491, 2009 WL 4827068, at *4 (Mich Ct. App. Dec. 15, 2009) .....................................................................27

*R*eliance Mediaworks (USA), Inc. v. Giarmarco, Mullins & Horton, P.C., No. 11-14486, 2012 WL 5929940, at *9 (E.D. Mich. Nov. 27, 2012) ....................................................................................27

*ReMedPar, Inc. v. AllParts Medical, LLC,* 683 F. Supp. 2d 605, 614 (M.D. Tenn. 2010) ...............................................................................14

*Sa*ban v. Caremark Rx, LLC, 780 F. Supp. 2d 700, 736 (N.D. Ill. 2011) .....................................19

*Schleif v. Nu-Source, Inc*., No. 10-4477, 2011 WL 1560672, at *7 (D. Minn. April 25, 2011) ...............................................................21

*Scottsdale Ins. Co. v. Cook*, No. CV-10-1661-PHX, 2010 WL 4942764, at *3 (D. Ariz. Nov. 24, 2010) .............................................................21

*Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008) ..............................12, 16

*SIFICO Indus., Inc. v. Advanced Plating, Techs.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994) ...........................................................................................24

*Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2012) .........................................8

*Tradesmen Int'l, Inc. v. Black*, No. 10-2098, 2011 WL 5330589, at *13 (C.D. Ill. Nov. 7, 2011) ...........................................................................27, 28

*U.S. v. Nosal,* 676 F.3d 854, 859 (9th Cir. 2012) ...........................................11, 16

*Utilase, Inc. v. Williamson,* No. 98-1233, 98-1320, 1999 WL 717969, at *6 (6th Cir. Sept. 10, 1999)..........................................................................21

*Von Holdt v. A-1 Tool Corp.,* 714 F. Supp. 2d 863, 876 (N.D. Ill. 2010) ...........14

*WEC Carolina Energy Solutions, LLC v. Miller,* 787 F.3d 199, 207 (4th Cir. 2012) ......................................................................................12, 17, 18

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).................................6

Statutes

M.C.L. § 445.1901 .............................................................................................2, 20

Other Authorities

18 U.S.C. § 1030.....................................................................................................11

18 U.S.C. § 1030(a)(2).............................................................................................18

18 U.S.C. § 1030(a)(2)(C) ..............................................................................11,13,15

18 U.S.C. § 1030(a)(4)........................................................................................11, 18

18 U.S.C. § 1030(a)(5)(A)...................................................................................11, 18

18 U.S.C. § 1030(c)(4)(A)(i)(I) ..............................................................................13

18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V) ..................................................................11, 13

18 U.S.C. § 1030(e)(8).............................................................................................18

18 U.S.C. § 1030(e)(11)...........................................................................................14

18 U.S.C. § 1030(g) provides .................................................................................13

M.C.L. § 445.1902(d) ........................................................................................20, 21

M.C.L. § 445.1908(1) ..............................................................................................26

Rules

Fed. R. Civ. P. 26(b)(5)(B) ...............................................................................5

Fed. R. Civ. P. 8(a)(2) .....................................................................................6, 7

Fed. R. Civ. P. 8(d) ............................................................................................7

Fed. R. Civ. P. 12(b)(6) ................................................................................3,6,9

M.R.P.C. 1.6(b) ..................................................................................................5

## I.    <u>INTRODUCTION</u>

This litigation is a frivolous effort by Plaintiff to harass one of its successful former executives, Jeremy Lehman ("Lehman"), and to manufacture a pretext to withhold significant severance payments and stock options owed to Lehman.  Despite attempting to assert numerous claims against Lehman and Thorium Data Science, LLC ("Thorium"), Plaintiff has failed to articulate a single viable cause of action.  In an effort to mask the factual and legal deficiencies in its various claims, Plaintiff has filed a thirteen (13) count Complaint containing three hundred forty-six (346) paragraphs and seventy-one (71) exhibits, hoping that the Court will sift through Plaintiff's myriad allegations and conclude that quantity is the equivalent of quality.  It is not, and Plaintiff's cumbersome and meandering Complaint falls far short of the standard necessary to open the doors to Federal court.  Plaintiff's Complaint is, instead, the quintessential "shotgun" or "kitchen sink" pleading.  As numerous courts have recognized, these types of pleadings are unacceptable, lead to undue burdens on the courts and litigants, and, by attempting to say everything, actually say nothing at all.  Because Plaintiff has not satisfied even its basic pleading obligations under the Federal Rules, the Complaint should be dismissed in its entirety.

Even if Plaintiff had filed a complaint that was "short and plain," as required, dismissal would be appropriate.  Plaintiff's claims under the Computer Fraud and Abuse Act ("CFAA") fail, because (1) Plaintiff has failed to allege a "loss" as required by the statute,  (2) Lehman was authorized to access his work computer in connection with his job duties, and (3) Plaintiff does not allege, and cannot establish, that Defendants' alleged conduct deprived Plaintiff of any particular information or that the allegedly deleted information is not available to Plaintiff through other means.

Plaintiff's claim for misappropriation of trade secrets under the Michigan Uniform Trade Secret Act ("MUTSA"), M.C.L. § 445.1901, *et seq*., is likewise deficient. Plaintiff devotes just nine (9) conclusory paragraphs to its misappropriation claim, merely regurgitating the definition of a "trade secret" under the MUTSA and claiming that its unidentified information meets this definition. Similarly, while Plaintiff presents the bare allegation that Defendants are somehow using these unidentified "trade secrets," Plaintiff must present more than its own conclusions to state a plausible claim for relief under MUTSA.

Plaintiff also attempts to assert nine separate breach of contract claims against Lehman arising out of his Employment Agreement and the parties' Settlement Agreement, none of which is valid. Despite nearly a dozen counts and hundreds of allegations, Plaintiff does not allege that it suffered any identifiable damages. Moreover, Plaintiff's claims rely on various restrictive covenants contained in the parties' agreements, but Plaintiff's own allegations render those restrictive covenants unenforceable. Finally, Plaintiff's claims arising under Lehman's Employment Agreement fail, because that agreement was expressly superseded.

Plaintiff's breach of fiduciary duty claim is also fatally flawed. To the extent that claim is based on the alleged misappropriation of trade secrets, it is pre-empted by MUTSA. To the extent the claim is based on Lehman's purported preparations to form his own entity and allegedly compete with Experian, the claim fails because mere preparation to compete is insufficient to sustain a claim for breach of fiduciary duty. Even if such allegations were sufficient, however, Plaintiff fails to identify any damages incurred as a result of the alleged breach, and damages are a necessary element of a claim for breach of fiduciary duty.

Finally, Plaintiff's tortious interference claim is baseless. Plaintiff fails to allege any breach of any particular agreement, and it certainly does not allege such a breach caused by

2

Defendants.  Further, to the extent that claim is based on Lehman's alleged solicitation of certain confidential information from Plaintiff's employees, such a claim is pre-empted by MUTSA.

For each of the foregoing reasons, the Complaint should be dismissed in its entirety. Plaintiff has simply thrown every conceivable allegation and legal theory against the wall in the hope that the Court might let something stick.  Neither the Court nor Defendants should be required to sift through Plaintiff's convoluted and onerous Complaint to determine whether Plaintiff can conjure up a valid cause of action against Defendants.  Plaintiff cannot, and Defendants respectfully request an order dismissing the Complaint.

## II.      BACKGROUND AND PERTINENT ALLEGATIONS[1]

Plaintiff is in the business of providing data management, processing, and analytics. Complaint [Dkt. #1] at ¶ 21.  On July 11, 2011, Plaintiff hired Lehman as its Executive Vice President for Global Product Development and Delivery.  *Id.* at 30.  During his employment, Lehman's primary responsibilities included the delivery of products and client services to Plaintiff's customers, identifying and procuring new business, and overseeing various divisions within Plaintiff's corporate structure.  *Id.* at ¶¶ 30-35.  In connection with his employment, Lehman executed an Employment Agreement, which contained various restrictive covenants and provided that it would be governed by the laws of the State of Illinois.  *See* Employment Agreement [Dkt. #1-1] at ¶ 3.  Thereafter, Lehman was involved in a material way in a number of Plaintiff's business initiatives.  *See* Complaint [Dkt. #1] at ¶¶ 34-38.

---

[1] Due to the burdensome nature of Plaintiff's Complaint, a detailed recitation of the material allegations underlying Plaintiff's purported claims is neither necessary nor possible. However, for the sake of background, and for purposes of this motion only, the following allegations are presumed to be true, as required in connection with a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

On March 12, 2014, Plaintiff notified Lehman that his position would be eliminated as part of a reduction in force, effective July 1, 2014.  *See id.* at ¶ 49.  Plaintiff's termination was not based on performance issues.  *See id.*  In fact, in connection with his termination, Lehman was provided a severance package pursuant to a Settlement Agreement between Lehman and Plaintiff.  *See id.* at ¶¶ 50-51.  Lehman's last day of employment with Plaintiff was June 30, 2014.  *Id.* at ¶ 57.

Plaintiff provided Lehman with a computer in connection with his job duties.  *See id.* at ¶¶ 10, 58.  Plaintiff alleges that access to its confidential and proprietary information and trade secrets was strictly limited to those who "have a 'need to know' the information as part of their job duties."  *Id.* at ¶ 86.  Lehman was one of these employees with a "need to know"; he allegedly was provided access to Plaintiff's "highly confidential and proprietary information" and trade secrets.  *See id.* at ¶¶ 3, 86.

Lehman is a resident of Grand Rapids, Michigan, while Plaintiff has offices in Chicago, Illinois and New York, New York.  *See, e.g., id.* at ¶¶ 21-22.  At the time his position was eliminated, Plaintiff was in possession of the laptop computer provided to him by Plaintiff in connection with Lehman's job duties.  *See id.* at ¶¶ 58-62.  Lehman ultimately returned his work-issued computer to Plaintiff, after allegedly deleting certain unidentified information at an unidentified point in time.  *Id.* at ¶ 63.  Plaintiff was aware of this alleged conduct as early as January of 2015.  *See id.* at ¶ 66.  In fact, Plaintiff sent a cease and desist letter to Lehman, demanding a return of the severance payment made to Lehman.  *Id.* at ¶ 66.

Lehman cooperated with Plaintiff and *voluntarily* provided Plaintiff with access to his personal electronic devices and data.  *Id.* at ¶ 67.  This inspection occurred in February and

March of 2015.  *Id.* at ¶ 67.  As a result of that inspection, Plaintiff allegedly came to believe that Lehman had engaged in "substantial additional wrongdoing[.]"  *Id.* at ¶ 69.

While Lehman was willing to cooperate with Plaintiff in connection with Plaintiff's personal computers, those computers contained extensive personal information and family photos.  Complaint [Dkt. #1-67], Ex. 67.  Importantly, *Lehman's personal computer also contained confidential attorney-client communications.  Id.*  Lehman expressed his concerns about protecting privileged information to Plaintiff's in-house counsel, Abril Turner.  *See id.*  To mitigate the risk of inadvertent disclosures, Plaintiff's counsel and defense counsel discussed a proposed inspection protocol using search terms and a privilege review.  *See* Complaint [Dkt. #1-71], Ex. 71.  Despite this ongoing discussion, upon receipt of Lehman's devices, without an agreement on the inspection protocol, Plaintiff's counsel unilaterally reviewed all of Lehman's devices and, without Lehman's consent, took possession of privileged information and work product.  *See, e.g.,* Complaint [Dkt. # 1-46], Ex. 46.  Worse yet, ***Plaintiff subsequently used Lehman's privileged information, obtained without Lehman's knowledge or consent, as purported support for its Complaint.  See id.***[2]

On May 6, 2015, nearly five months after Plaintiff claims it first became aware of Lehman's alleged misconduct, Plaintiff initiated this litigation.  *See generally* Complaint [Dkt. #1].  Generally speaking, Plaintiff claims that Lehman accessed his work-issued computer

---

[2] Exhibit 46 to the Complaint is a privileged memo from Lehman to his attorneys outlining the facts as he understood or believed them to be at the time the memo was written.  It provides a factual summary, as well as potential responses to Plaintiff's allegations.  Plaintiff's counsel's decision to (1) *access* this information without authority and (2) *file* that information as part of a pleading in Federal Court is nothing short of outrageous.  Plaintiff should be ordered to take immediate steps to cure its improper possession and use of Lehman's privileged information, if that is even possible.  *See, e.g.,* Fed. R. Civ. P. 26(b)(5)(B).  Moreover, Plaintiff's unauthorized possession and use of Lehman's privileged information for Plaintiff's own purposes raises serious ethical concerns.  *See* M.R.P.C. 1.6(b).

without authorization while he was an employee, that he misappropriated certain unidentified trade secrets, that he breached the parties' two contracts in nine different ways, that he breached his fiduciary duty to Plaintiff by allegedly preparing to compete, and that he tortiously interfered with certain contracts between Plaintiff and various employees. *See id.* at ¶¶ 221-346.

## III.  LAW AND ARGUMENT

### A.  STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *accord Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Not all allegations need be accepted as true, however.  Courts should not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor is a complaint sufficient if it provides only "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557; *see also Iqbal*, 556 U.S. at 678.  In determining whether a claim has facial plausibility, courts consider the allegations in the complaint and may also consider any attachments or exhibits.  *Mackall v. U.S. Postal Serv.*, No. 12–cv–10302, 2012 WL 2131150, at *1, fn. 2 (E.D. Mich. May 2, 2012); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

**B.      PLAINTIFF'S COMPLAINT IS AN IMPROPER "SHOTGUN" PLEADING AND SHOULD BE DISMISSED IN ITS ENTIRETY.**

Plaintiff's Complaint is *sixty-eight* (68) pages long.  It contains *three hundred forty-six* (346) numbered paragraphs, excluding sub-paragraphs, many of which are conclusory and contain multiple factual allegations.  Together with *seventy-one* (71) exhibits, the Complaint totals *six hundred three* (603) pages.  The *thirteen* (13) counts in the Complaint, many of which are redundant or serve no apparent purpose,[3] are preceded by *thirty-seven* (37) pages of cumbersome factual allegations, made in *two hundred twenty* (220) numbered paragraphs.  Each and every one of the thirteen counts in the Complaint begins by alleging, "Plaintiff incorporates by reference *each of the allegations* contained in the foregoing paragraphs 1-220 *as if fully restated herein*."  *See, e.g.,* Complaint [Dkt. # 1] at ¶ 221 (emphasis added).  In short, Plaintiff's Complaint is neither simple, concise, nor direct.  *See* Fed. R. Civ. P. 8(d).  Rather, it is convoluted, expansive, and meandering.

Under Rule 8, "[e]ach allegation [in a complaint] must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "A pleading that states a claim for relief must contain … a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  "The words 'short and plain' are themselves short and plain, and they mean what they say: A complaint must be concise, and it must be clear.  Rule 8 was not promulgated to provide helpful advice; it has the force of law and it must be followed."  *Gurman v. Metro Housing & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011) (dismissing sixty

---

[3] For instance, the Complaint contains *nine* separate breach of contract counts.  *See* Complaint [Dkt. #1] at 45-64.  In other places, the Complaint crams multiple claims into a single count, making it even less clear what Plaintiff's actual legal theories are, much less the supposed factual basis for those theories.  *See, e.g.,* Complaint [Dkt. #1] at 40 (purporting to assert three separate claims for various violations of the CFAA in a single count).

page complaint containing 250 paragraphs and 17 counts and noting, "Plaintiffs' complaint manages to be both prolix and uninformative").

"The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) (affirming dismissal of lengthy complaint that did not connect particular allegations to particular causes of action and noting, "we conclude the trial court did not err in refusing to attempt to create order out of chaos"). "Length may make a complaint unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2012) (quoting *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003). However, "[j]udges and adverse parties need not try to fish a gold coin from a bucket of mud; dismissal is the appropriate remedy for district courts presented with a bucket of mud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) (internal citations and quotations omitted).

Because Rule 8 requires pleadings to be short and plain, courts have regularly criticized—and rejected—verbose "kitchen sink" or "shotgun" complaints, "in which a plaintiff brings every conceivable claim against every conceivable defendant"[4] or where a complaint presents a litany of factual allegations followed by numerous counts, "where each count adopts the allegations of all preceding counts,"[5] making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."[6] "This method of pleading everything, 'including the kitchen sink,' displays a lack of care, deliberation, and professionalism

---

[4] *Gurman*, 842 F. Supp. 2d at 1153.

[5] *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014).

[6] *Paylor*, 748 F.3d at 1126.

on the part of counsel engaging in such conduct." *Glover v. Mary Jane Elliott, P.C.*, No. 1:07-cv-648, 2007 WL 2904050, at *2 (W.D. Mich. Oct. 2, 2007) (Scoville, J.).

"Shotgun" or "kitchen sink" complaints are problematic for a number of reasons. They: "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) (affirming dismissal). Due to these inherent problems, "shotgun" pleadings are "altogether unacceptable." *Id.* "The plaintiff who files a kitchen-sink complaint [improperly] shifts onto the defendant and the court the burden of identifying plaintiff's genuine claims and determining which of those claims might have legal support." *Gurman*, 842 F. Supp. 2d at 1153. However, "[i]t is [ ] plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Id.* "A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)[.]" *Paylor*, 748 F.3d at 1126; *see also McClean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 480 (4th Cir. 2002).

Plaintiff's Complaint is precisely the sort of "shotgun" or "kitchen sink" complaint that courts have uniformly condemned, and it should be dismissed accordingly. The Complaint is nearly seventy pages long and contains more than three hundred paragraphs of factual allegations. Many of these allegations are entirely conclusory. *See, e.g.,* Complaint [Dkt. # 1] at ¶ 345 ("The actions by Lehman and Thorium were willful, and accomplished by improper motive and through improper means."). Others allege wrongdoing by individuals other than Lehman—individuals who, despite allegedly grievous misconduct, were not joined as

defendants—or that Lehman did *not* engage in certain alleged wrongdoing.  *See, e.g., id.* at ¶¶ 120, 125 (alleging that other individuals, and not Lehman, improperly submitted expense reports).

Worse yet, each and every one of Plaintiff's thirteen counts incorporates all two hundred twenty "background" allegations by reference—including those that cite to one or more of the seventy-one attached exhibits.  As a result, it is impossible to know which factual allegations are supposedly material to each particular claim; Plaintiff has "essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two."[7]  *Gurman*, 842 F. Supp. 2d at 1154; *see also Beyrer*, 722 F.3d at 947.  "That is emphatically not the job of either a defendant or the Court." *Gurman*, 842 F. Supp. 2d at 1154.  Rather than attempting to "create order out of chaos," the Court should simply dismiss Plaintiff's entire Complaint for failure to comply with Rule 8.  *See Glenn*, 868 F.2d at 371.

---

[7] Not only does the Complaint fail to link particular allegations to particular claims, but shotgun complaints like Plaintiff's necessarily result in onerous, unfocused discovery.  *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114-15 (2d Cir. 1982) (dismissing 69 page shotgun complaint as "anything but the simple, direct, and concise statement mandated by Rule 8[d]" and noting, the complaint "would give [plaintiffs'] attorneys carte blanche in the area of liberal federal discovery.").  "Because the 'in terrorem effect of such unfettered discovery would, to say the least, be substantial, it is important that the wheat … be separated from the chaff." *Id.* at 115; *see also Cook v. Randolph County*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("Experience teaches that unless cases are pled clearly and precisely, issues are not joined, [and] discovery is not controlled[.]" (quoting *Anderson v. District Bd. of Trs. Of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996)).

Plaintiff has already provided a preview of the cumbersome, far-reaching discovery that will likely face the Court and the parties if Plaintiff's Complaint is allowed to survive.  Along with the Complaint, Plaintiff filed a motion for expedited discovery, which this Court summarily denied, along with extensive proposed initial discovery.  *See* Motion for Expedited Discovery [Dkt. # 6].  Plaintiffs' proposed initial discovery included forty-six (46) interrogatories—excluding numerous subparts—and sixty (60) requests for production of documents, even though Defendants already made their computers available to Plaintiff voluntarily for forensic inspection. *See, e.g.,* Complaint [Dkt. # 1] at ¶ 67.

### C.   PLAINTIFF FAILS TO ALLEGE A VIOLATION OF THE CFAA (COUNT I).

Count I of Plaintiff's Complaint purports to allege various violations of the CFAA, 18 U.S.C. § 1030.  "To state a civil claim for a violation of the CFAA, the plaintiff must allege 1) damage or loss; 2) caused by; 3) a violation of one of the substantive provisions set forth in § 1030(a); and 4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)."[8] *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 997-98 (N.D. Ill. 2011).  Generally speaking, the CFAA recognizes two categories of claims: "access" claims and "transmission" claims.  *See Pulte Homes, Inc. v. Laborers' Int'l Union of N.A.*, 648 F.3d 295, 301 (6th Cir. 2011).  "Access" claims involve situations where an individual supposedly accesses a computer without authority.  *See id.* at 303; *see also* 18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(4). "Transmission" claims involve situations where an individual causes the transmission of a program resulting in "damage" to a protected computer system.  *See* 18 U.S.C. § 1030(a)(5)(A). Plaintiff has attempted to assert two "access" claims and one "transmission" claim under the CFAA.  Plaintiff has failed to state a claim under the CFAA under any theory, however.

### 1.   The CFAA Is a Criminal Statute and Must Be Construed Narrowly, in Defendants' Favor.

"Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking[.]"  *U.S. v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012); *see also Dice Corp. v. Bold Techs.*, 913 F. Supp. 2d 389, 414 (E.D. Mich. 2012), *aff'd* 556 Fed. App'x 378 (6th Cir. 2014).  "Generally, the CFAA protects against unauthorized computer access."  *Dice Corp. v. Bold Techs.*, 556 Fed. App'x 378, 387 (6th Cir. 2014).  While the statute does provide for limited

---

[8] The CFAA provides a private remedy only if a plaintiff can establish a substantive violation *and* one of the factors set forth in § 1030(c)(4)(A)(i)(I)-(V).  18 U.S.C. § 1030(g).  *See* 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(V).  The only factor even arguably at issue in this case is 18 U.S.C. § 1030(c)(4)(A)(i)(I), which applies to the "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."

civil liability,[9] "the CFAA is a criminal statute focused on criminal conduct.  The civil component is an afterthought."  *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008).

"[B]ecause the CFAA is primarily a criminal statute, the rule of lenity requires any ambiguity to be resolved in favor of the party accused of violating the law.  Federal criminal liability should not be based on every violation of a private computer use policy."  *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, No. 1:10-CV-450, 2012 WL 2524008, at *4 (W.D. Mich. June 29, 2012) (Bell, J.) (citation omitted).  This is true regardless of whether the action is civil or criminal in nature.  *Pulte Homes*, 648 F.3d at 302.

"[I]ncreasingly, employers have used [the CFAA,] a statute originally designed to punish hackers[,] against disloyal employees."  *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013).  However, "the CFAA was not meant to cover the disloyal employee who walks off with confidential information.  Rather, the statutory purpose is to punish trespassers and hackers."  *Dana*, 2012 WL 2524008, at *4 (quoting *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008)).  In light of the intent of the statute, courts increasingly have resisted efforts by employers to stretch the CFAA beyond its intended application.  *See, e.g., id.*; *see also WEC Carolina Energy Solutions, LLC v. Miller*, 787 F.3d 199, 207 (4th Cir. 2012) (dismissing CFAA claim and noting, "we are unwilling to contravene Congress's intent by transforming a statute meant to target hackers into a vehicle for imputing liability to workers who access computers or information in bad faith or who disregard a use policy."); *Nosal*, 676 F.3d at 860 (dismissing employer's CFAA claim and noting, "under the [plaintiff's] broad

---

[9] *See* 18 U.S.C. § 1030(g).

interpretation of the CFAA, such minor dalliances [as violating computer use policies] would become federal crimes.").

     **2.**     **Plaintiff's CFAA Claim Fails, Because Plaintiff Has not Alleged an Interruption in Service and Therefore Fails to Allege a "Loss" Under the Act.**

Given the convoluted nature of Plaintiff's Complaint, the supposed factual basis for each of Plaintiff's CFAA claims is not entirely clear.[10]  It is clear, however, that Plaintiff has failed to state a claim under the CFAA, because Plaintiff has not alleged a "loss," as defined in and required by the statute.  18 U.S.C. § 1030(g) provides, "[a]ny person who suffers damage or *loss* by reason of a violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  18 U.S.C. § 1030(g) (emphasis added).  Subsection 1030(c)(4)(A)(i)(I), the only factor arguably applicable, requires a showing of a "*loss* to one or more persons during any 1-year period … aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I) (emphasis added).  Thus, no matter which CFAA theory Plaintiff is attempting to pursue, it must establish a "loss" as defined under the statute.  *See id.*; *see also Grant Mfg. & Alloying, Inc. v. McIlvain*, No. 10-1029, 2011 WL 4467767, at *4 fn. 9 (E.D. Pa. 2011) (CFAA plaintiff must establish statutorily-defined "loss" where other factors set forth in § 1030(c)(4)(A)(i)(I)-(V) are clearly inapplicable); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 472 (S.D.N.Y 2004) (same).

---

[10] While contained in one count, Plaintiff attempts to allege three separate theories of liability, asserting violations of 18 U.S.C. §§ 1030(a)(2)(C) (accessing a protected computer without authorization and thereby obtaining information), 1030(a)(4) (accessing a protected computer without authorization and with intent to defraud and thereby obtaining anything of value), and 1030(a)(5)(A) (causing the transmission of a program and intentionally causing damage to a protected computer).

13

The CFAA defines a "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, incurred, or other consequential damages *incurred because of interruption of service*[.]"   18 U.S.C. § 1030(e)(11) (emphasis added).   Consistent with the statutory language and anti-hacking intent of the CFAA, any claim under the CFAA must arise out of an interruption of service; absent such an interruption, there is no "loss" under the act.   *Gen. Scientific Corp. v. SheerVision, Inc.,* No. 10-cv-13582, 2011 WL 3880489, at *4 (E.D. Mich. Sept. 2, 2011) ("As the statutory language makes clear, 'losses' under the CFAA are limited to costs incurred and profits lost as a direct result of interrupted computer service."); *Cheney v. IDP Analytics, LLC*, No. 08-23188-CIV, 2009 WL 1298405, at *6 (S.D. Fla. April 16, 2009) (dismissing CFAA claim arising out of former employee's alleged misappropriation and subsequent deletion of confidential information from his work computer for failure to allege a "loss" and noting, "[p]lain reading of the definition of 'loss' under the statute suggests that any 'loss' must be related to interruption of service.").[11]

---

[11] A growing number of courts have adopted this narrow interpretation of "loss" under the CFAA, which is consistent with the statutory language and intent, as well as the rule of lenity. *See, e.g., Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG*, 304 F. Supp. 2d 574, 581 (D. Minn. 2007) (dismissing CFAA claim where Plaintiff failed to allege an interruption of service, and therefore failed to allege a statutory "loss"); *Cohen v. Gulfstream Training Academy, Inc.*, No. 07-60331-CIV, 2008 WL 961472, at *4 (S.D. Fla. April 9, 2008) (dismissing CFAA claim and noting, "any 'loss' must be related to interruption of service");  *Continental Group, Inc. v KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009) ("noting that under the CFAA, all loss must be as a result of 'interruption of service.'"); *Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154, 1158 (E.D. Cal. 2013) (dismissing CFAA claim for failure to allege an interruption of service); *Von Holdt v. A-1 Tool Corp.*, 714 F. Supp. 2d 863, 876 (N.D. Ill. 2010) (CFAA claim not viable absent evidence of an interruption of service); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l., Inc.*, 616 F. Supp. 2d 805, 812 (N.D. Ill. 2009) (same); *ReMedPar, Inc. v. AllParts Medical, LLC*, 683 F. Supp. 2d 605, 614 (M.D. Tenn. 2010) (dismissing purported CFAA claim where Plaintiff failed to allege any interruption in service and citing additional authorities).

Plaintiff does not, and cannot, allege an interruption in service as a result of Lehman's purported conduct. Plaintiff does not allege that it was unable to access its computer systems, that its business was interfered with in any way, or that it was unable to conduct its business in the usual manner. Because Plaintiff does not allege a single fact suggesting an interruption in service, Plaintiff has failed to allege a "loss" under the CFAA, and Count I of the Complaint should be dismissed. *See id*.

### 3.   Plaintiff's "Access" Theories Fail, Because Lehman Was Authorized to Access His Work Computer.

Plaintiff attempts to assert two "access" theories under the CFAA, alleging violations of 18 U.S.C. §§ 1030(a)(2)(C) and 1030(a)(4). Each theory requires plaintiffs to allege and prove that a defendant accessed a computer system "without authorization" or in a manner that "exceeds authorized access." Notably, *using* information is not the same thing as *accessing* a computer system under the CFAA. *New Show Studios, LLC v. Needle*, No. 2:14-cv-01250-CAS, 2014 WL 2988271, at *6 (C.D. Cal. June 30, 2014). "The CFAA expressly prohibits improper "access" of computer information. It does not prohibit misuse or misappropriation" of information. *Dana*, 2012 WL 2524008, at *3 (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010)). "Congress did not intend the CFAA to extend to situations where the access [to a computer] was technically authorized but the particular use of the information was not." *Id.* at *4. Consequently, an "access" claim under the CFAA is viable only where "initial access is not permitted" or where "initial access is permitted but the access of certain information is not permitted." *Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 687 (E.D. Mich. 2012).[12]

---

[12] While some courts have adopted a broader interpretation of the terms "without authorization" and "exceeds authorized access," based on an agency theory, a growing number of

Courts applying this plain reading of the CFAA have rejected "access" claims brought by employers against employees based on the employees' alleged misuse of company-issued computers.  *See, e.g., Nosal,* 676 F.3d at 860-61 (discussing numerous problems with a broad interpretation of the CFAA in the employment context, which would convert routine office activity into federal crimes).  This is because employers routinely provide access to computer networks as part of their employees' job duties.  "Once an employee is granted 'authorization' to access an employer's computer that stores confidential company data, that employee does not violate the CFAA *regardless of how he subsequently uses the information*."  *Cranel, Inc. v. Pro Image Consultants Grp., LLC*, No. 2:13-cv-766, 2014 WL 4829485, at *7 (S.D. Ohio Sept. 29, 2014) (emphasis added); *Rickman*, 554 F. Supp. 2d at 772 (dismissing CFAA claim against former employee based on alleged misuse of work computer and noting, "Defendant … may have violated his employment agreements, but the allegations against him are not that he was a computer pirate or that he otherwise caused harm to [P]laintiff's computer"); *Shamrock Foods* 535 F. Supp. 2d at 966 (dismissing employer's former CFAA claim and noting that the statute "deals with an 'unauthorized access' concept of computer fraud rather than the mere use of a computer.").

Moreover, courts have increasingly held that an employer's internal computer policies are irrelevant to the CFAA analysis; where an employee initially is permitted to *access* a computer, it is irrelevant whether the employee subsequently *uses* information obtained through such

---

courts have rejected this broad approach, noting that it is inconsistent with the rule of lenity.  *See, e.g., Dana*, 2012 WL 2524008, at *3-*5 ("because there is no dispute that [plaintiff] gave [defendants] authority to access the files, [plaintiff] cannot establish that [defendants] accessed the files without authorization for purposes of the CFAA."); *see also Nosal*, 676 F.3d at 857 (noting that a broad interpretation of the CFAA and its access provisions would "transform the CFAA from an anti-hacking statute into an expansive misappropriation statute.").

permitted access, even if such use is expressly prohibited.[13]   *See e.g. Nosal*, 676 F.3d at 863 ("[I]f Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly."); *see also WEC Carolina Energy*, 687 F.3d at 207 ("we are unwilling to contravene Congress's intent by transforming a statute meant to target hackers into a vehicle for imputing liability to workers who … disregard a use policy."); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) ("[W]hen an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations.").

Adopting a narrow interpretation of the CFAA, this Court recently rejected a former employer's purported CFAA claim based on similar facts to this case.  In *Dana*, the plaintiff alleged that a former employee improperly accessed a computer system when that employee copied numerous files onto his personal computer before leaving the company, subsequently deleting those files.  *See Dana*, 2012 WL 2524008, at *1.  The plaintiff attempted to argue both "access" and "transmission" theories under the CFAA.[14]  This Court rejected both theories.  *Id.* at *5-*6.  In rejecting the plaintiff's "access" theory, the Court relied heavily on the fact that the defendants were authorized to access the computers in connection with their job duties.  *See id.* at *3, *6.

The result should be no different here.  Plaintiff expressly alleges that Lehman had access to Plaintiff's "highly confidential and proprietary information" and that he was authorized to use his work computer to access such information.  *See* Complaint [Dkt. #1] at ¶¶ 3 (alleging

---

[13]  Plaintiff's heavy reliance on its internal computer policies is therefore misplaced.

[14]  Although the plaintiff does not appear to have articulated its legal theories by distinguishing between "access" and "transmission," the employee in that case allegedly deleted information from his computer after copying it, leading to a number of arguments in support of an alleged CFAA violation based on the destruction of information.

Lehman had access to confidential and proprietary information), 53 (acknowledging that Lehman was provided access to "extensive confidential and/or proprietary information."), 58 (alleging that Lehman was provided with an "EMS laptop computer" in connection with his employment,) 164 (alleging Lehman was provided with a laptop by Plaintiff). Because Plaintiff concedes that Lehman was provided with, and permitted to use, the laptop at issue in connection with his work, Plaintiff's access claims fail as a matter of law.[15] *WEC Carolina Energy*, 687 F.3d at 207; *Nosal*, 676 F.3d at 864.

### 4.   Plaintiff's "Transmission" Theory Fails, Because Plaintiff Has not Alleged "Damage" Under the Act.

Plaintiff's purported "transmission" theory fares no better than its "access" theories. 18 U.S.C. § 1030(a)(5)(A) establishes a CFAA claim where one "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes *damage* without authorization, to a protected computer[.]" (emphasis added). "Damage" is defined by the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8).  This definition of "damage"

---

[15] To the extent Plaintiff's "access" claims are based on Lehman's access to Plaintiff's *information*, as opposed to its *computer*, that claim is untenable; CFAA does not regulate access to *information*, but rather access to *computers*. *See* 18 U.S.C. §§ 1030(a)(2), 1030(a)(4); *New Show Studios*, 2014 WL 2988271, at *6 ("Accessing Plaintiffs' information, however, is not the same thing as accessing Plaintiffs' computer systems, even if that information was at some point stored on those computers.").  Further, to the extent Plaintiff's "access" theory arises out of Lehman's alleged access to his work computer for the purpose of deleting information, that claim is contrary to the plain language of the statute, which applies only if such unauthorized access is used to *obtain*, rather than *destroy* information. *See id.*; *see also Grant Mfg.*, 2011 WL 4467767, at *8 (rejecting "access" claim where Defendant allegedly accessed computer to *delete* information). Finally, to the extent Plaintiff's theory is based on the alleged access of computers by individuals other than Mr. Lehman, that theory is fatally flawed.  *See, e.g., Jagex Ltd v. Impulse Software*, 750 F. Supp. 2d 228, 238 (D. Mass. 2010) (rejecting CFAA claim based on alleged access by individuals other than Defendant); *see also Nat'l City Bank, N.A. v. Republic Home Loans, LLC*, No. C09-1550RSL, 2010 WL 959925, at *5 (W.D. Wash. March 12, 2010) (same).

requires "some diminution in the completeness or usability of data or information on a computer *system*." *Pulte Homes* 648 F.3d at 302 (emphasis added).  In other words, to state a claim under the CFAA under a "transmission" theory, a plaintiff must allege and establish that a "transmission" weakened a sound computer system or diminished the plaintiff's ability to use data or a system.  *See id.* at 301.  "[D]eletion of files alone does not constitute damage if the deleted data is still available to the plaintiff through other means."  *Dana*, 2012 WL 2524008, at *5; *see also Grant Mfg.* 2011 WL 4467767, at *8 (rejecting "transmission" claim under the CFAA where deleted information was still available to the plaintiff in other ways). Consequently, courts routinely reject "transmission" theories under the CFAA where the plaintiff fails to allege and establish permanent deletion of original files.  That is, a "transmission" claim is not viable absent a showing that the allegedly deleted data is inaccessible by any other means. *See, e.g., Dana*, 2012 WL 2524008, at *6; *see also Saban v. Caremark Rx, LLC*, 780 F. Supp. 2d 700, 736 (N.D. Ill. 2011) (bare allegations of deletion of data from devices held insufficient to establish "transmission" claim).

Plaintiff's Complaint fails to allege that Lehman's alleged conduct deprived *Plaintiff* of the use of any of its information.  While the Complaint generally alleges that Lehman deleted certain unidentified files contained on his work laptop, there are no allegations that this supposed conduct somehow deprived Plaintiff of that information.  In fact, the allegations in the Complaint suggest that Plaintiff is able to access its own information; Plaintiff specifically alleges that the information supposedly on Lehman's work computer originated from Plaintiff's "proprietary and protected network."  *See, e.g.,* Complaint [Dkt. #1] at ¶ 129 (alleging certain e-mail was copied from Plaintiff's network and e-mailed to Lehman).  Plaintiff likewise alleges that the information supposedly deleted from Lehman's laptop hard drive was pulled from "EMS' computer

system[.]"  *See id.* at ¶ 232.  Additionally, Plaintiff is in possession of a "clone" of Lehman's laptop, which is an identical copy of the hard drive in the laptop supposedly at issue.  *See* Complaint [Dkt. # 1-54], Ex. 56.  Again, Plaintiff fails to allege that it is unable to access any of this information or that its "protected network" or "computer system" have been compromised. Since Plaintiff fails to allege that any particular original data or files belonging to Plaintiff were destroyed and are inaccessible by any other means, Plaintiff's "transmission" claim fails as a matter of law.

### D.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS (COUNT II).

Plaintiff's claim for purported misappropriation of trade secrets under MUTSA, M.C.L. § 445.1901, *et seq.*, is also deficient.  To state a claim for misappropriation under MUTSA, a Plaintiff must allege:  "(1) the existence of a trade secret; (2) the Defendant's acquisition of the trade secret in confidence; and (3) the Defendant's unauthorized use of it."  *Dice Corp.*, 913 F. Supp. 2d at 406.  Plaintiff devotes just nine conclusory paragraphs to its misappropriation claim, and while Plaintiff attempts to allege the bare elements of a misappropriation claim, such a threadbare recital of the elements of a cause of action is insufficient to state a claim.  *See, e.g.,* *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

To qualify as a "trade secret" under MUTSA, the information at issue must not only be kept secret, but it must also have independent economic value from not being known to or readily ascertainable by the public.  *See* M.C.L. § 445.1902(d).  Plaintiff's Complaint simply describes certain broad and generic categories of purported trade secrets such as "research and development activities and efforts," "marketing strategies," and "business strategies." *See* Complaint [Dkt. # 1] at ¶ 243.  Aside from the fact that these vague assertions do not begin to

identify the purported trade secrets with any specificity.[16]   There are absolutely no factual allegations demonstrating that Plaintiff's unidentified trade secrets derive independent economic value from not being generally known.   *See* M.C.L. § 445.1902(d).   Instead, Plaintiff simply claims that it "derives independent economic value from this information not being generally known to the public[.]"  Complaint [Dkt. #1] at ¶244.

In other words, Plaintiff merely regurgitates the definition of a "trade secret" under MUTSA.  This amounts to nothing more than "a formulaic recitation of the elements of a cause of action," and is insufficient to state a claim for misappropriation of trade secrets.  *Twombly*, 550 U.S. at 555; *see also Scottsdale Ins. Co. v. Cook*, No. CV-10-1661-PHX, 2010 WL 4942764, at *3 (D. Ariz. Nov. 24, 2010) (dismissing trade secrets claim where "plaintiff [made] only minimal factual allegations about the specific trade secrets that were allegedly disclosed, and barely [went] beyond the conclusory allegations of each element of the offense"); *Medafor, Inc. v. Starch Med., Inc.*, No. 09-CV-0441, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (dismissing trade secrets claim, citing *Twombly*, where Plaintiff described the trade secrets allegedly at issue in a manner "so broad as to be meaningless" and Plaintiff failed to allege facts sufficient to demonstrate Defendant's alleged use of purported trade secrets); *Schleif v. Nu-Source, Inc.*, No. 10-4477, 2011 WL 1560672, at *7 (D. Minn. April 25, 2011) (dismissing trade secrets claim where Plaintiff simply alleged that it maintained trade secrets and that Plaintiff had access to those supposed secrets and noting, "this threadbare recital does not satisfy the standards set forth by the Supreme Court in *Twombly* and *Iqbal*.").

---

[16] A Plaintiff asserting a misappropriation claim under Michigan law must identify the purported trade secrets "clearly, unambiguously, and with specificity."  *See, e.g., Utilase, Inc. v. Williamson*, No. 98-1233, 98-1320, 1999 WL 717969, at *6 (6th Cir. Sept. 10, 1999).

Plaintiff also fails to allege any facts to suggesting that Lehman or Thorium actually used Plaintiff's purported trade secrets in any way. Instead, Plaintiff simply alleges that "Lehman and Thorium have explicitly acknowledged their use of EMS' [unidentified] trade secrets in [unidentified] documents sent to [unidentified] *potential* Thorium partners and clients." Complain [Dkt. # 1] at ¶ 246 (emphasis added). This bare, self-serving and entirely conclusory allegation is insufficient to state a claim under the standards set forth in *Iqbal* and *Twombly*. *See id.* Because Plaintiff's MUTSA claim relies entirely on conclusory allegations and threadbare recitals of the elements of a MUTSA claim, Count II of the Complaint must be dismissed. *See id.*

### E.   PLAINTIFF'S BREACH OF CONTRACT CLAIMS FAIL (COUNTS III-XI).

The Complaint contains *nine* separate breach of contract claims. Despite hundreds of allegations, however, the Complaint fails to state a claim for breach of contract for three independent reasons. First, Plaintiff fails even to allege that Plaintiff suffered damages as a result of the purported breaches. Second, the restrictive covenants in both the Employment Agreement and the Settlement Agreement, which give rise to Plaintiff's claims, are unenforceable. Finally, Plaintiff's claims arising out of Lehman's Employment Agreement fail, because that agreement was expressly superseded by the Settlement Agreement.

#### 1.   Plaintiff Fails to Allege Damages.

Under both Illinois and New York law,[17] damages are an essential component of a breach of contract claim, and where a plaintiff fails to adequately allege damages, dismissal is warranted. *Palmolive Tower Condominiums, LLC v. Simon*, 949 N.E.2d 723, 730 (Ill. Ct. App.

---

[17] The Employment Agreement is governed by Illinois law. Employment Agreement [Dkt. # 1-1] at 1, ¶ 3. The Settlement Agreement is governed by New York law. Settlement Agreement [Dkt. # 1-7] at 3, ¶ 13.

2011) (dismissing breach of contract claim where plaintiff failed to allege facts demonstrating damages); *McCormick v. Favreau*, 82 A.D.3d 1537, 1541 (N.Y. App. Div. 2011) (dismissing breach of contract claim where plaintiff failed to allege facts sufficient to demonstrate damages arising out of purported breach of non-compete agreement).

Despite spanning nearly seventy pages, the Complaint fails to allege a single fact suggesting that Plaintiff has suffered any damages whatsoever.[18]   Plaintiff does not identify a single customer or employee lost as a result of Lehman's alleged conduct.[19]   Likewise, Plaintiff does not claim to have lost any revenue or profits.   Plaintiff does not allege such damages, because it has not actually suffered any damages.   The closest Plaintiff comes to alleging *facts*— as opposed to bare *conclusions*—on the issue of damages is in several boilerplate paragraphs suggesting that Plaintiff made certain severance payments to Lehman and provided him with stock options.   *See* Complaint [Dkt. # 1] at ¶¶ 261, 270, 279, 287, 296, 305, 315, 324, 333. These contractual payments cannot constitute damages; Plaintiff was contractually obligated to make those payments and would have done so even if Lehman had not allegedly breached the parties' agreements.   "The purpose of damages for breach of contract is to put the injured party in the position it would have been in had the contract been fully performed"   *Palmolive Tower Condos*, 949 N.E.2d at 730.   Since Plaintiff is in precisely the same position that it would be in

---

[18]   Additionally, Plaintiff's claims based on alleged breaches of Lehman's purported confidentiality obligations fail, as Plaintiff does not allege that Lehman actually used or disclosed any particular confidential information (*i.e.*, Plaintiff has not alleged a breach that could give rise to damages).   *See, e.g.*, Complaint [Dkt. # 1] at ¶¶ 258, 293 ("*To the extent that Lehman used and uses EMS confidential and trade secret information* … Lehman has breached is [*sic*] obligation … to maintain in confidence non-public information of EMS." (emphasis added)).   These allegations amount to nothing more than pure speculation.

[19]   While Plaintiff identifies various employees supposedly solicited by Lehman at an unidentified time and in an unarticulated manner, Plaintiff alleges and concedes that this alleged, unidentified solicitation did not result in the departure of a single employee; Plaintiff fired those employees unilaterally.   Complaint [Dkt. # 1] at ¶ 133.

even in the absence of any alleged breach of the parties' agreements, its allegations of "damages" in the form of severance payments are insufficient, and each of its breach of contract claims should be dismissed.

### 2.   Plaintiff's Breach of Contract Claims Are Invalid, Because the Restrictive Covenants in the Parties' Agreements Are Unenforceable.

Counts III-XI of the Complaint are based on alleged violations of various restrictive covenants in the Employment Agreement and the Settlement Agreement, including covenants not to compete and not to solicit customers or employees. *See* Complaint [Dkt. # 1] at ¶¶ 252-333.  At the same time, Plaintiff expressly alleges that Lehman was involuntarily discharged because his position was eliminated.  Plaintiff does not allege—and could not allege—that Lehman was terminated for unacceptable performance.  Rather, Plaintiff simply alleges that Lehman's departure from the company was the result of a reduction in force.  *See id.* at ¶ 4. This allegation is fatal to Plaintiff's breach of contract claims.

Under both Illinois and New York law, which govern the Employment Agreement and Settlement Agreement, respectively, restrictive covenants are not enforceable where an employee is discharged involuntarily or without cause.  *Bishop v. Lakeland Animal Hosp., P.C.*, 644 N.E.2d 33, 36 (Ill. Ct. App. 1994) (restrictive covenants unenforceable where employee is terminated without cause); *Martin v. Fed. Life Ins. Co*., 644 N.E.2d 42, 44 (Ill. Ct. App. 1994) (employee's termination was without cause where "Plaintiff was not accused of any wrongdoing, poor performance or incompetence."); *SIFICO Indus., Inc. v. Advanced Plating, Techs.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994) ("New York courts will not enforce [restrictive covenants] in an employment agreement where the former employee was involuntarily terminated."); *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010) (same).  Since Plaintiff expressly alleges that Lehman was involuntarily terminated, and because Plaintiff has not

alleged, and cannot allege, any performance deficiencies, the restrictive covenants in the Employment Agreement and Settlement Agreement are unenforceable, and Plaintiff's breach of contract claims based on those covenants should be dismissed.  *Id.*

### 3. Plaintiff's Claims Under the Employment Agreement (Counts III-VI) Should Be Dismissed, Because That Agreement Has Been Superseded.

Counts III-VI of the Complaint are based on alleged breaches of Lehman's obligations under the Employment Agreement.  *See* Complaint [Dkt. # 1] at ¶¶ 252-305.  The Employment Agreement, by its terms, pertained to Lehman's employment generally, his supposed confidentiality obligations, and various restrictions on Lehman's ability to solicit business or otherwise compete with Plaintiff.  *See generally* Employment Agreement [Dkt. # 1-1].  In 2014, and in connection with the termination of Lehman's employment due to a reduction in force, the parties entered into the Settlement Agreement, which, like the Employment Agreement, addressed "[Lehman's] employment with and his termination from [Plaintiff.]" Settlement Agreement [Dkt. # 1-4] at 1.

The Settlement Agreement also addressed Lehman's purported confidentiality obligations and attempted to establish restrictions on Lehman's ability to compete with Plaintiff or solicit Plaintiff's employees and customers.  *Id.* at ¶¶ 3, 7, 8.  The Settlement Agreement further provided that it represented the "settlement of *all* disputed issues between the parties."  *Id.* at ¶ 12 (emphasis added).  Finally, and importantly, the Settlement Agreement contained a broad merger clause, stating:

> This Agreement constitutes a single, integrated, written contract *expressing the entire understanding between the parties* with respect to the subject matter hereof. ... *All prior discussions, agreements, understandings and negotiations* have been and are merged and integrated into *and are superseded by this Agreement*.

*Id.* at ¶ 20 (emphasis added).  Both the Employment Agreement and the Settlement Agreement address the same subject matter, namely Lehman's employment with Plaintiff and his obligations arising out of that employment relationship.  The Settlement Agreement expressly supersedes the Employment Agreement, however.  *Id.*  Consequently, Plaintiff's claims based on the Employment Agreement are invalid.  *See Friedman v. Ocean Dreams, LLC*, 56 A.D.3d 719, 720 (N.Y. App. Div. 2008) ("Under the traditional rules of contract law, the courts will enforce a clear and unambiguous merger clause.").

### F.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT XII).

Plaintiff alleged claim for breach of fiduciary duty also fails.  While Plaintiff's precise legal theory is once again less than clear, given the byzantine nature of the Complaint, Plaintiff's claim is based at least in part on Lehman's alleged use of Plaintiff's purported trade secrets.  *See* Complaint [Dkt. #1] at ¶ 337.   To the extent Plaintiff's claim is based on the alleged misappropriation of trade secrets, that claim is preempted by MUTSA.  *See* M.C.L. § 445.1908(1) ("[T]his act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."); *Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 948-49 (W.D. Mich. 2003) (holding that all tort claims arising out of alleged misappropriation of trade secrets and confidential information are preempted by MUTSA).  As a result, to the extent it relies on allegedly misappropriated information, Plaintiff's breach of fiduciary duty claim is invalid and must be dismissed.  *See id.*

Additionally, Plaintiff has failed even to allege the basic elements of a breach of fiduciary claim.  "To state a cause of action for breach of fiduciary duty, a Plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the employee, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Tradesmen Int'l, Inc. v.*

*Black*, No. 10-2098, 2011 WL 5330589, at *13 (C.D. Ill. Nov. 7, 2011); *see also Ford Motor Co. v. Toth*, 872 F.2d 1025, (6th Cir. 1989) (noting that "Michigan courts have generally listed damage as a necessary element of actions for … breach of fiduciary duty[.]"); *Reliance Mediaworks (USA), Inc. v. Giarmarco, Mullins & Horton, P.C.*, No. 11-14486, 2012 WL 5929940, at *9 (E.D. Mich. Nov. 27, 2012) ("A claim alleging breach of fiduciary duty sounds in tort and damages is a necessary element.").[20]

Even assuming that Lehman owed the fiduciary duties alleged in the Complaint, Plaintiff's claim fails because it has not identified any cognizable damages arising out of the alleged breach.  Plaintiff's allegation that it has been somehow been damaged as a result of Lehman's purported breach is entirely conclusory, simply claiming: "EMS has been damaged by Lehman's breach of his fiduciary obligations to EMS."  Complaint [Dkt. #1] at ¶ 339.  Plaintiff makes no effort to identify *how* it has been damaged, much less the alleged scope of those unidentified damages.  Plaintiff does not allege that it lost any revenue, customers, or employees as a result of Lehman's alleged conduct during his time with Plaintiff.  In fact, Plaintiff does not even allege that Lehman began to compete with Plaintiff during his employment.[21]  In short,

---

[20] The Employment Agreement, which governed the parties' employment relationship, was governed by Illinois law.  However, Plaintiff's breach of fiduciary duty claim sounds in tort.  The Court need not conduct a choice of law analysis, however, because both Illinois and Michigan require damages as a component of a breach of fiduciary duty claim.

[21] Plaintiff does not allege a single instance where Lehman solicited Plaintiff's customers, made any sales, solicited any particular employee, or orchestrated a mass departure of employees.  In fact, Plaintiff could not make such allegations, because Plaintiff voluntarily terminated the very employees it now claims were solicited.  *See* Complaint [Dkt. #1] at ¶ 133. Plaintiff claims that Lehman supposedly participated in exploratory meetings and began to "make preparations to compete," but this is insufficient to establish a breach of fiduciary duty. *See id.* at ¶ 337; *see also Quality Mfg., Inc. v. Mann*, No. 286491, 2009 WL 4827068, at *4 (Mich Ct. App. Dec. 15, 2009) (preparation to compete does not, in itself, violate any fiduciary duty owed to employer); *see also Tradesmen*, 2011 WL 5330589, at *13 ("[A]n employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed by prospective employer.").

Plaintiff's allegation that it has supposedly been damaged is nothing more than a "naked assertion" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555.  Since Plaintiff fails to make any factual allegations giving rise to a plausible claim that it has suffered any damages, Plaintiff's breach of fiduciary duty claim must be dismissed.  *See id*; *see also Tradesmen*, 2011 WL 5330589, at *14 (rejecting breach of fiduciary duty claim by former employer arising out of alleged misappropriation of trade secrets and solicitation of business).

G.    **PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM (COUNT XIII) FAILS, BECAUSE PLAINTIFF HAS FAILED TO ALLEGE A BREACH OF CONTRACT CAUSED BY LEHMAN.**

The last Count in Plaintiff's Complaint attempts to allege a claim for tortious interference with contractual relations.  *See* Complaint [Dkt. #1] at ¶¶ 341-346.  "The elements of tortious interference with a contract are (1) the existence of a contract, (2) *a breach of a contract*, and (3) an unjustified instigation of the breach by the Defendant."  *Knight Enter. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (emphasis added).  Once again, Plaintiff has failed to allege even the basic elements of its claim; Plaintiff has failed to allege a breach of any contract or that such breach was allegedly caused by Lehman or Thorium.  *See* Complaint [Dkt. #1] at ¶¶ 341-346.  Plaintiff's theory appears to be based on Lehman's alleged solicitation and purported inducement of various employees to end their relationship with Plaintiff.[22]  Plaintiff does not identify how such conduct, even if it occurred, would constitute a breach of any of those employees' contractual obligations to Plaintiff.  Moreover, even if Plaintiff's apparent theory were viable, the Complaint specifically alleges that it was *Plaintiff* that ended the employment relationship.  *See* Complaint [Dkt. #1] at ¶ 133.  Because Plaintiff voluntarily ended these

---

[22] To the extent Plaintiff's theory is based on Lehman's alleged solicitation of "proprietary information and trade secrets," from Plaintiff's employees, that claim is pre-empted by MUTSA.  *See* Complaint [Dkt. #1] at ¶¶ 342-43; *see also Bliss*, 270 F. Supp. 2d at 948-49.

relationships, Plaintiff cannot establish, and in fact does not allege, a breach of these agreements wrongfully caused by Lehman.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request an order granting their Motion to Dismiss the Complaint in its entirety.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendants


Dated:  May 28, 2015         By:    */s/ Jon M. Bylsma*
                                    Jon M. Bylsma (P48790)
                                    Timothy P. Monsma (P72245)
                            Business Address:
                                    333 Bridge Street, N.W.
                                    Grand Rapids, MI  49504
                                    Telephone: (616) 336-6000
                                    jmbylsma@varnumlaw.com
                                    tpmonsma@varnumlaw.com

9440522