UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXPERIAN MARKETING
SOLUTIONS, INC.,

      Plaintiff,

v.

JEREMY LEHMAN,
THORIUM DATA SCIENCE, LLC,

      Defendants.
_____/

File No. 1:15-CV-476

HON. ROBERT HOLMES BELL

## OPINION

This is an action for (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.; (2) misappropriation of trade secrets under the Michigan Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1901; (3) breach of contract; (4) breach of fiduciary duty; and (5) tortious interference with contract.

Plaintiff Experian Marketing Solutions, Inc. ("Experian") is a marketing-services company based in Illinois. Defendant Jeremy Lehman is a former employee of Experian residing in Grand Rapids, Michigan. Defendant Thorium Data Science, LLC ("Thorium") is an entity allegedly created by Lehman while he was employed by Experian. On June 18, 2015, the Court entered an opinion and order granting, in part, Experian's motion for a preliminary injunction, after determining that Experian had established a substantial likelihood of success on its claims for misappropriation of trade secrets and breach of

contract. The facts alleged in the complaint are summarized in that opinion (ECF No. 27). On September 29, 2015, the Court granted Defendants' motion to dismiss, in part. The Court dismissed the "access" claims under the CFAA and the tortious-interference-with-contracts claim. Plaintiff subsequently filed an amended complaint. Before the Court is Defendants' motion to dismiss the amended complaint in part for failure to state a claim (ECF No. 47). The Court finds that oral argument is not necessary. For the reasons discussed herein, Defendants' motion will be granted in part and denied in part.

**I.**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but it "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). A complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**II.**

**A. Count I: CFAA**

Count I of the amended complaint asserts essentially the same CFAA claims that the Court analyzed and dismissed in its September 29, 2015, opinion. Plaintiff apparently concedes that these same claims in the amended complaint are subject to dismissal, as it contends that Defendants' motion "focuses on a claim which this court has already dismissed." (Pl.'s Resp. in Opp'n to Mot. to Dismiss 4, ECF No. 53, PageID.2131.)

Accordingly, for the reasons stated in that opinion, Plaintiff fails to state an "access" claim under 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4); however, Plaintiff states a "transmission" claim under 18 U.S.C. § 1030(a)(5)(A).

### B. Count XIII: Tortious Interference with Contract

Count XIII of the amended complaint alleges that Defendants tortiously interfered with contracts between Plaintiff and several of its employees, including: Salar Ghahary, Sergey Vladimirov, Mark Frisch, Monika Jacober, Anna Thomas, Gordon Cowie, Mark Wan, Amir Behrozi, and Trevor Watkins. Plaintiff alleges that Ghahary, Vladimirov, Frisch, and Jacober signed employment agreements requiring them to protect Plaintiff's confidential information. Plaintiff also alleges that all of its employees were bound by Plaintiff's code of conduct, which required them to protect Plaintiff's confidential information and to obtain written approval from management before engaging in outside employment.

The elements of a claim for tortious interference with contract are: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005) (recognizing that damages is an element of a claim). This sort of claim is distinguishable from a claim for tortious interference with a business relationship; the latter is not claimed in the amended complaint.

Defendants assert that Plaintiff's allegations do not state a claim because they do not identify a breach of a contract, let alone a breach caused by Defendants. To the contrary, the

4

amended complaint identifies specific agreements with specific employees, and the manner in which those agreements were breached, which is a substantial improvement over Plaintiff's original complaint. Although the allegations contained in Count XIII are somewhat vague in some respects (alleging that the employees breached their obligations by performing unidentified work that is competitive with the work that they performed for Plaintiff, and by disclosing unidentified confidential information), the Court is satisfied that, reviewing the complaint as a whole, the allegations suffice to state a claim. Plaintiff has alleged sufficient facts to give rise to a plausible inference supporting each element of its claim.

Defendants also assert that Plaintiff cannot state a tortious-interference-with-contracts claim based on a breach of Plaintiff's code of conduct, because that code does not create an enforceable agreement. A claim for tortious interference with contract requires the existence of a valid contract. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). The code of conduct, which is attached to the amended complaint, states:

> *No Effect on Employment*
>
> Nothing in this Code confers upon employees any right with respect to their continued employment nor does it constitute an employment agreement or interfere in any way with their right or the right of the Company to terminate their employment in accordance with applicable law.

(Global Code of Conduct § 9, ECF No. 46-2, PageID.1454.)

Defendants cite several cases finding employee handbooks to be unenforceable in contract. *See Heurtebise v. Reliable Bus. Computers*, 550 N.W.2d 243, 247 (Mich. 1996) (refusing to enforce arbitration provision in a handbook which stated that it did not create "any employment or personal contract" and that it was subject to modification by the employer); *Pacheco v. Boar's Head Provisions Co.*, No. 1:09-cv-298, 2010 WL 1323785, at *2 (W.D. Mich. Mar. 30, 2010) (refusing to enforce terms of handbook which stated that "it is only intended to provide guidelines, that it is subject to change without notice, and that it is not an employment contract.").[1] As the Court explained in *Pacheco*:

> Under Michigan law, written statements in a company policy and procedure manual can give rise to contractual obligations on the part of the employer. *See Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 890 (Mich. 1990). Michigan cases have repeatedly held, however, that an employee handbook "will not create enforceable rights when the handbook expressly states that such provisions are not intended to create an employment contract." *Lytle v. Malady*, 579 N.W.2d 906, 913 (Mich. 1998) (citing *Heurtebise v. Reliable Bus. Computers, Inc.*, 550 N.W.2d 243 (Mich. 1996)); *see also Highstone v. Westin Eng'g, Inc.*, 187 F.3d 548, 552 (6th Cir. 1999) (declining to find a contractual obligation where the handbook stated that "[i]t is not a contract with any employee"); *Blake v. Mesaba Airlines*, No. 99–1437, 2000 WL 712384, at *1–4 (6th Cir. May 24, 2000) (holding that an employee handbook containing an express disclaimer of contractual intent and an express reservation of the right to amend could not support a breach of contract claim).

2010 WL 1323785, at *2; *accord Murphy-Davidson v. Stoll*, No. 1:14-cv-779, 2015 WL 4545928, at *5 (W.D. Mich. July 28, 2015); *see also Stewart v. Fairlane Cmty. Mental Health Centre*, 571 N.W.2d 542, 546 (Mich. Ct. App. 1997) (policy containing an arbitration

---

[1] The parties apparently assume that Michigan law applies to interpretation of Plaintiff's code of conduct. For purpose of this motion, the Court assumes the same.

agreement not binding on employer where policy stated that it is "not a contract of employment" and the company reserved the right to modify the handbook at its sole discretion); *Miller-Webb v. Genesee Cnty.*, No. 325593, 2016 WL 1579016, at *3 (Mich. Ct. App. Apr. 19, 2016) (employee manual not binding where it stated that it is not an employment contract or offer of one); *Foote v. Dow Chem. Co.*, No. 288294, 2010 WL 173777, at *3 (Mich. Ct. App. Jan. 19, 2010) (employee had no right to enforce handbook which stated, "Nothing in this document constitutes a contract of employment with any individual.").

As in the cases cited above, Plaintiff's code of conduct expressly states that it is not intended to create an employment agreement. Plaintiff cites *Hicks v. EPI Printers, Inc.*, 702 N.W.2d 883 (Mich. Ct. App. 2005), and *Melena v. Anheuser-Busch*, 847 N.E.2d 99 (Ill. 2006), to support its argument that the code of conduct creates enforceable rights in contract. In both of those cases, the courts found that an employee handbook or an employer policy was an enforceable agreement, but the facts in those cases are distinguishable from this one. Unlike the code of conduct in this case, the employee handbook in *Hicks* "contain[ed] no express language stating that its terms are not intended to create an enforceable agreement." *Hicks*, 702 N.W.2d at 887. Moreover, unlike Plaintiff's code of conduct, the policy at issue in *Melena* made clear that, by "continuing or accepting an offer of employment," the employee agreed to submit all covered claims to arbitration. *Melena*, 847 N.E.2d at 101.

Plaintiff's code of conduct contains no such terms evincing an intent to enter a binding agreement.

Plaintiff reads the disclaimer in its code of conduct narrowly, contending that it merely clarifies that the relationship with its employees is an "at-will" relationship; however, Michigan courts have reviewed similar language and concluded that it disclaims an intent to be bound by its terms. Indeed, in *Heurtebise*, the Michigan Supreme Court rejected the court of appeals' reasoning that the disclaimer addressed only the at-will nature of the plaintiff's employment. 550 N.W.2d at 246. The reasoning of *Heurtebise* and the other cases cited above extends to this one. Thus, Plaintiff's code of conduct is not an enforceable contract.

Plaintiff also contends that an at-will contract can be the basis for a tortious-interference claim, citing *Health Call of Detroit*. That may be true, but such a claim requires the existence of a valid, enforceable contract, which the code of conduct is not. Thus, to the extent that Plaintiff relies on breaches of the code of conduct as the basis for its claim of tortious interference with contract, it does not state a claim. To the extent that Plaintiff relies upon breaches of employment agreements with certain employees, however, it states a tortious-interference claim.

### III.

In summary, Defendants' motion to dismiss will be granted in part and denied in part. Count I of the complaint will be dismissed for failure to state a claim to the extent that it is based upon improper access to Experian's computers, or exceeding authorized access to

those computers.  In addition, Count XIII will be dismissed for failure to state a claim to the extent that it relies upon breaches of the code of conduct by its employees. In all other respects, the motion will be denied. An order will be entered that is consistent with this Opinion.

Dated: <u>May 4, 2016</u>                                         <u>/s/ Robert Holmes Bell            </u>
                                                                                ROBERT HOLMES BELL
                                                                                UNITED STATES DISTRICT JUDGE